IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SAUNDRA G. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIV-13-580-HE |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
|   Acting Commissioner of Social ) | |
|    Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her application for benefits on April 14, 2009. (TR 214). Plaintiff initially alleged she became disabled on August 1, 2003, due to a stroke, degenerative disc disease, and arthritis. (184-189, 225). On that date, Plaintiff stated that she

stopped working to care for her husband. (TR 225). Later, Plaintiff amended her alleged disability onset date to December 31, 2008. (TR 34-35).

In a supplemental hearing conducted on January 11, 2012, before Administrative Law Judge Parrish, Plaintiff testified that she had a twelfth grade education and she was 52 years old.[1] She stated that in 2008 she had back and neck pain due to degenerative disc disease, right knee pain and swelling, dizzy spells, and chest pain. Plaintiff described other medical conditions and symptoms, including high blood pressure for which she took medication, shortness of breath, hand pain due to mild right carpal tunnel syndrome and bilateral ulnar neuropathy in her elbows, right shoulder pain, thyroid problems for which she took medication, cardiac problems for which she took medications, fibromyalgia, and migraine headaches, but she did not relate those conditions or symptoms to the time period prior to the expiration of her insured status. Plaintiff's daughter and a vocational expert ("VE") also testified at the hearing.

The ALJ issued a decision on May 25, 2012, in which the ALJ found that before her date last insured for benefits Plaintiff had severe impairments due to degenerative disc disease of the lumbar spine and small vessel ischemic disease. (TR 21-30). Following the agency's well-established sequential evaluation procedure, the ALJ found at step three that these impairments did not meet or medically equal the requirements of a listed impairment

---

[1] A previous hearing was conducted regarding Plaintiff's application, and in a previous decision her application was denied. (TR 67-74). However, the transcript of the first hearing could not be found, and the Appeals Council reversed the decision and directed that a supplemental hearing be conducted. (TR 79-81).

at 20 C.F.R. pt. 404, subpt. P, app. 1.

At step four, the ALJ found that through December 31, 2008, Plaintiff retained the residual functional capacity ("RFC") to perform the requirements of light work except that she could not reach overhead, stoop, kneel, or crouch more than occasionally. (TR 25). In connection with the step four finding, the ALJ considered the credibility of Plaintiff's allegations of severe, disabling pain. For reasons explained in the decision, the ALJ found that Plaintiff's subjective allegations were not entirely credible. (TR 26-28). The ALJ also determined, for reasons stated in the decision, that the functional report submitted by Plaintiff's mother and the statement given by Plaintiff's neighbor were given only "slight weight." (TR 27).

In consideration of Plaintiff's RFC for work, the ALJ found that Plaintiff was not capable of performing her past work as a loan processor. (TR 28). However, relying on the VE's testimony, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act because she was capable of performing other work available in the economy, including the jobs of file clerk, customer service clerk, and general office clerk. (TR 28-29).

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a

determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

Plaintiff's insured status for Title II disability insurance benefits expired on December 31, 2008. (TR 214). Thus, Plaintiff had to show she was disabled on or before that date. See Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 360 (10th Cir. 1993).

III. Evaluation of Severe Impairments at Steps Three, Four and Five

Plaintiff first contends that the ALJ failed to consider Plaintiff's severe impairment due to small vessel ischemic disease at steps three through five. Plaintiff refers to the ALJ's statement in the decision that Plaintiff "complained of dizziness that was found to have etiology in the small vessel ischemic disease seen on MRI." (TR 27). Plaintiff contends that her impairment due to small vessel ischemic disease limited her ability to work as the ALJ

4

found it to be a severe impairment at step two, but the ALJ did not mention the impairment or impose any limitations with respect to the impairment in determining Plaintiff's RFC for work, even though the ALJ recognized that Plaintiff's impairment due to ischemic disease was "most likely" the cause of her dizzy spells. Plaintiff's Opening Brief, at 4.

Plaintiff did not describe at the hearing any dizziness occurring on or before the date she was last insured for benefits. Plaintiff stated that she had "dizzy spells" (TR 47), although she did not describe her "dizzy spells' or give any indication that her "dizzy spells" would affect her ability to work.

The medical record reflects that in November 2006 Plaintiff reported to her treating physician, Dr. Lacefield, that she had experienced an episode of dizziness while shopping with tunnel vision that lasted five minutes. (TR 334). Dr. Lacefield noted Plaintiff had described symptoms of a transient ischemic attack, or TIA. However, Plaintiff did not exhibit any neurologic abnormality on examination. The physican recommended a carotid doppler study, and a carotid doppler test conducted in November 2006 was interpreted as showing no significant findings. (TR 397).

Plaintiff complained to her treating physician, Dr. Lacefield, in February 2007 that she continued to experience occasional "dizzy spells," (TR 328). Dr. Lacefield noted that EKG testing was normal and suggested a CT scan of Plaintiff's head. The CT scan was normal. (TR 394).

In April 2007, Dr. Lacefield referred Plaintiff to Dr. Bhaktaram for evaluation of her dizziness complaints. Dr. Bhaktaram noted that Plaintiff complained of continuing tingling

5

and numbness and one episode on March 21, 2007, in which she experienced tunnel vision, tingling, and numbness. (TR 298). Dr. Bhaktaram conducted a physical examination and lab testing, both of which were noted to be unremarkable. Dr. Bhaktaram interpreted MRI testing of Plaintiff's brain as revealing "white matter changes, more significant for her age." (TR 299). He noted that her "[d]izzy spells" were of uncertain origin and that the dosage of her blood pressure medication had been reduced. (TR 299). He advised Plaintiff to continue her medications, quit smoking, and return for followup examination in one year. (TR 299).

Plaintiff was then referred to a neurologist, Dr. Pitman, D.O., for evaluation. In April 2007, Dr. Pitman noted Plaintiff exhibited normal findings on physical examination except for some decreased sensation in her lower extremities. (TR 312-313). Nerve conduction studies, EKG, and EMG testing were all normal. (TR 313). On June 11, 2007, Plaintiff returned to Dr. Pitman for further evaluation. She gave a history of "occasional" dizzy spells that were "not as severe as previously." (TR 308). She had no focal weakness, numbness, vision loss, vertigo, or headaches, and she was still smoking. Plaintiff reported that her symptoms improved after she discontinued her blood pressure medication, and Dr. Pitman suggested she might be "hypotensive." (TR 309). Dr. Pitman noted an EEG test was normal and that a previous brain MRI revealed small vessel ischemic disease. The only treatment recommended for this condition was a daily low-dose aspirin. (TR 309).

By Plaintiff's own report, her dizziness symptoms improved when she discontinued a blood pressure medication and that her dizziness symptoms occurred only occasionally in June 2007. Nothing in the record reflects that those symptoms increased after that date. In

6

September 2007, as Plaintiff points out, Plaintiff complained to a treating doctor that she continued to experience only occasional dizziness symptoms. (TR 318). No treatment was recommended for the symptom.

The ALJ noted in the decision that Plaintiff had reported dizziness and had undergone extensive testing, all of which were essentially normal other than the MRI finding of small vessel ischemic disease, and that the only recommended treatment for this condition was daily aspirin. (TR 25). In the absence of any evidence in the record that Plaintiff's impairment due to small vessel ischemic disease had resulted in functional limitations that would limit Plaintiff's ability to work, no error occurred in the ALJ's failure to include work-related limitations at steps three, four, or five related to this impairment.

IV. Credibility

Plaintiff contends that the ALJ failed to perform a proper credibility determination with respect to her allegation of disabling back pain. The assessment of a claimant's RFC at step four generally requires the ALJ to "make a finding about the credibility of the [claimant's] statements about [her] symptom(s) and [their] functional effects." Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 1 (1996). "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).

The ALJ summarized the pertinent medical evidence in the decision, including the reports of MRI testing of Plaintiff lumbar spine conducted in October 2005, October 2007,

7

and January 2010, and found that Plaintiff had a severe impairment due to degenerative disc disease of her lumbar spine prior to her date last insured. (TR 24). The ALJ noted that before her insured status expired in December 2008 Plaintiff had been treated conservatively for her complaints of back pain, including a series of facet joint injections. (TR 24). The ALJ stated that "[t]here is nothing in the record to indicate that these injections did not result in some improvement in her back complaints; notably, she did not continue to seek or receive treatment after these 2007-08 injections, and more recent medical treating records do not show ongoing and regular complaint of back pain. "The evidence after these injections shows that the claimant made general complaints of myalgias and arthralgias affecting her back, hands, and knees thereafter" but MRI testing did not show "evidence of large disc protrusion or severe acquired spinal stenosis." (TR 24). In evaluating Plaintiff's credibility, the ALJ noted Plaintiff's subjective statements and found that her statements were not entirely credible because they were unsupported by her medical history, the reports of her treating and examining physicians, the findings on physical examinations, the prescribed medical treatment, and her description of her activities. (TR 26). Specifically, the ALJ reasoned that physical examinations during the relevant period did not show significant range of motion limitation or gait abnormality, "[n]o doctor has recorded findings of the significant level of difficulty walking and moving about as described by the claimant," "[o]nly conservative measures have been discussed and provided. Even recently, the claimant remains under conservative treatment for her complaint. Also, recent records continue to report no significant abnormalities with motor or sensory function or gait." (TR 27).

Additionally, the ALJ correctly noted Plaintiff's 2010 lumbar MRI study was interpreted to show improvement when compared to her previous lumbar MRI study. (TR 27-28).

Plaintiff points to the medical records of Dr. Amhan and Dr. Ahearn as evidence that the ALJ's credibility analysis was faulty because her physicians had recorded her difficulties with walking and moving.

The record shows that Plaintiff was treated by Dr. Khan in 2006 and early 2007 for degenerative disc disease with lumbar spondylosis and facetogenic syndome. (TR 289). Plaintiff underwent a series of facet joint injections in her lumbar spine conducted by Dr. Khan in April 2006, and she reportedly "had good relief of symptoms" after these injections. (TR 290). She returned to Dr. Khan almost a year later, in January 2007, when she reported her back pain had returned. (TR 289). Dr. Khan recommended repeat lumbar facet joint injections, and in February 2007 she underwent a right lumbar facet joint injection. (TR 289-290, 295). There is no further record of treatment of Plaintiff by Dr. Khan.

Several months later, Dr. Amhan, a pain management specialist, noted that on November 1, 2007, Plaintiff was evaluated for her complaint of chronic lower back pain. In his report of this evaluation, Dr. Amhan noted that Plaintiff gave a history of failure to respond to previous conservative treatment measures for her low back pain and that she described pain that "interfer[ed] with all aspects of her life including her ability to walk, to sleep and to do her activities of daily living." (TR 466). Contrary to Plaintiff's argument in her opening brief, these notations in Dr. Amhan's report describe Plaintiff's subjective statements concerning the extent of her back pain and response to previous treatment

9

measures. The notes are not documented findings or opinions by the physician concerning Plaintiff's functional abilities or limitations. Thus, these notations are not inconsistent with the ALJ's findings in relation to the credibility determination.

Dr. Amhan also reported that in a physical examination of Plaintiff on November 1, 2007, she exhibited "significant decrease" in lumbar movements with tenderness in her sacroiliac joints area and decreased hip movement. (TR 467). In Dr. Amhan's November 1, 2007 report, he noted that he recommended Plaintiff undergo sacroiliac joint injections and begin taking prescribed pain medication as treatment for her back pain. (TR 467). The ALJ's statements in the decision correctly set forth the physical findings and treatment prescribed by Dr. Amhan. Under Dr. Amhan's care, Plaintiff underwent bilateral sacroiliac joint injections in November 2007 and a lumbar epidural steroid injection in February 2008. (TR 416-417, 426, 434-435).

Plaintiff contends that because Dr. Amhan continued to note findings of limited range of back motion in his office notes in November 2007, January 2008, and February 2008 that these observations are "contrary to the ALJ's conclusions" regarding the severity of her back impairment. The record shows that in January 2008 Plaintiff returned to Dr. Amhan for follow-up treatment, and Dr. Amhan noted physical examination findings of decreased lumbar range of motion and "slow gait." (TR 464). Plaintiff returned to Dr. Amhan in February 2008, and Dr. Amhan again noted Plaintiff exhibited decreased lumbar spine range of motion. (TR 463). However, these findings alone do not reflect an inconsistency between the medical evidence and the ALJ's credibility determination.

As the ALJ aptly noted in the decision, only conservative treatment measures were provided for Plaintiff's back pain complaints and degenerative disc disease in her lumbar spine. The ALJ reasonably inferred that "nothing in the record . . . indicate[s] that these injections did not result in some improvement in her back complaints." (TR 24). The record reflects that Plaintiff only intermittently sought treatment for lumbar pain related to her degenerative disc disease. She did not seek further treatment from Dr. Khan after the epidural steroid injection in February 2008, and she did not seek treatment for back pain again until December 2008.

The record reflects that Plaintiff saw Dr. Ahearn on December 12, 2008, shortly before her insured status expired, when she gave a history of previous treatment by Dr. Amhan for pain management but stated that the injections she received from him were no longer relieving her pain. (TR 480). Plaintiff also reported to Dr. Ahearn that she was having pain not just in her back but also in her neck, hands, all joints, and in her pelvic area. (TR 480). The physician prescribed anti-depressant medication and Lyrica® for Plaintiff's chronic pain, fatigue, and general depression. (TR 481).

Plaintiff reported two months later, in February 2009, that the medications were working to reduce her pain and help her sleep. (TR 482). However, she complained that she could not work because she could not stand over 30 minutes or lift a gallon of milk. (TR 482). This notation is listed in Dr. Ahearn's office note as "current/associated symptoms," and, contrary to Plaintiff's argument in her opening brief, it does not qualify as a medical statement of Plaintiff's functional abilities or limitations at that time. Moreover, Plaintiff's

11

only physical complaints, as noted by Dr. Ahearn, at that time were related to hand and knee pain, not back pain. (TR 482).

The ALJ's decision reflects consideration of several factors deemed relevant to the credibility determination, including Plaintiff's medications, the frequency and nature of her medical contacts, and her daily activities. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). See also 20 C.F.R. § 404.1529(c)(3)(listing factors relevant to symptoms that may be considered by ALJ). The ALJ provided reasons that are well supported by the record for finding that Plaintiff's complaint of disabling pain and limitations due to her degenerative disc disease was not entirely credible. Because there is substantial evidence in the record to support the credibility determination and the ultimate determination that Plaintiff was not disabled on or prior to December 31, 2008, the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before      May 19th         , 2014, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's

recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   29th   day of   April  , 2014.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE